DET 137479



## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

K.L., A.L., M.L., minor children,
by and through their parent,
Vincent Lewandowski,

        Plaintiff,

vs.

Southgate Community Schools Board of Education,
Sharon Irvine, Superintendent, and Board Members;
Timothy O. Estheimer, President, Andrew A. Green,
Vice President, Dr. Darlene L. Pomponio, Rick Lamos,
Jason Craig, Neil J. Freitas, and Shawn Sage

_____,

        Defendant.

Case:2:21-cv-12316
Judge: Lawson, David M.
MJ: Stafford, Elizabeth A.
Filed: 09-30-2021 At 04:36 PM
CMP KL,minor, et al v. Southgate Co
mmunity Schools Board of Education, e

---

*Pro Se*
Vincent Lewandowski
1118 Wheelock
Detroit, MI 48208
lew123.vl@gmail.com

---

## **COMPLAINT**

Plaintiffs, **K.L., A.L., and M.L.,** minor children, by and through their parent, Vincent Lewandowski,, pro se, hereby file this Complaint against Defendants, Southgate Community School District; Sharon Irvine, in her individual capacity and in her official capacity as Superintendent of the Southgate Community School District; and Southgate Community Schools District Board of Education Members; Timothy O. Estheimer, President, Andrew A. Green, Vice President, Dr. Darlene L. Pomonio, Rick Lamos, Jason Craig, Neil J. Freitas, and Shawn Sage, all individual elected officials sued in their individual capacity and in their capacity as members of the School Board (collectively, "Defendants"). In support of the claims set forth herein, Plaintiffs allege and aver as follows:

### **PARTIES**

1.    Plaintiffs **K.L., A.L., and M.L.,** minor children who reside in Southgate Community School District, in Wayne County, Michigan. Plaintiff **K.L., A.L., and M.L.,** are and were at all times relevant hereto students at Southgate Community Schools. Suit is brought herein on behalf by their parent, Vincent Lewandowski.

2.    Plaintiff Vincent Lewandowski, an adult individuals who are residents and taxpayers in Wayne County, Michigan. Plaintiff, Vincent Lewandowski, are the parent of K.L., A.L., and M.L.

3.    Defendant, Southgate Community School District Board of Education (the "School Board" or the "Board") is a public entity which, acting under color of law, is responsible for the formulation and implementation of all official governmental laws, policies, regulations and procedures in effect for the Southgate Community School District.

4.    Defendant, Sharon Irvine was at all relevant times Superintendent of the Southgate Community School District in that capacity, acting under color of law, she is responsible for the implementation of all official governmental laws, policies, regulations and procedures governing the Southgate Community School District. She is sued in her official and individual capacities.

5.    Defendant Timothy O. Estheimer is a Wayne County resident and member of the School Board, sued here in his individual and representative capacity. Timothy O. Estheimer is currently the President of the School Board.

6.    Defendant Andrew A. Green is a Wayne County resident and member of the School Board, sued here in his individual and representative capacity. Andrew A. Green is currently Vice President of the School Board.

7.    Defendant Dr. Darlene L. Pomponio is a Wayne County resident and member of the School Board, sued here in her individual and representative capacity.

8.    Defendant Rick Lamos is a Wayne County resident and member of the School Board, sued here in his individual and representative capacity.

9.    Defendant Jason Craig is a Wayne County resident and member of the School Board, sued here in his individual and representative capacity.

10.    Defendant Neil J. Freitas is a Wayne County resident and member of the School Board, sued here in his individual and representative capacity.

11.    Defendant Shawn Sage is a Wayne County resident and member of the School Board, sued here in his individual and representative capacity.

12.    At all relevant times hereto, the School Board and the individual Defendants were acting under color of state law.

## JURISDICTION AND VENUE

13.    Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

14.   This Court has subject matter jurisdiction over Plaintiffs' claims under 28 U.S.C. §1331, 28 U.S.C. §§1343(a)(3), (4), 28 U.S.C. §1367, 28 U.S.C. §2201, and 42 U.S.C. §1983.

15.   There exists an actual and justiciable controversy between Plaintiffs and Defendant required resolution by this Court.

16.   Plaintiffs have no adequate remedy at law.

17.   Venue is proper before the United States District Court for the Eastern District of Michigan under 28 U.S.C. §1391 because all parties reside or otherwise are found herein, and all acts and omissions giving rise to Plaintiffs' claims occurred in the Eastern District of Michigan.

## FACTS

18.   Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

**A.   Southgate Community School District Board of Education**

19.   The Southgate Board of Education is "composed of eight citizens who are representatives of the residents of [List of Their Cities of Residence]. Board members are elected 'at large' on a nonpartisan ballot and serve for staggered terms of four years. https://resources.finalsite.net/images/v1597331426/southgateschoolscom/zcl456sslmiwyq svjpuo/Southgate_PolicyManual-U080620-CLEAN00294775x7AE831.pdf

20.   The 7 individuals currently serving as School Board Members are Defendants Timothy O. Estheimer, Andrew A Green, Dr. Darlene L. Pomponio, Rick Lamos, Jason Craig, Neil J. Freitas, Shawn Sage.

21.   Defendant Sharon Irvine, was voted in by the seven-member Board on November 30, 2020 to the position of Superintendent, and is charge with the administration of the Southgate Community Schools.

22.   Defendant Timothy O. Estheimer is the President of the School Board. Pursuant to Mich. Const. art XI § 1, Timothy O. Estheimer was required to sign an Oath of Office swearing to support the Constitution of the United States and the Constitution of the State of Michigan and to faithfully and impartially discharge his duties as a Board Member Board (though he is now President of the School Board) to the best of his ability, and in accordance with the laws "now in effect and hereafter to be enacted." **See Exhibit A.**

23.   Defendant Andrew A. Green, pursuant to Mich. Const. art XI § 1 was required to sign an Oath of Office swearing to support the Constitution of the United States and the Constitution of the State of Michigan, and to faithfully and impartially discharge his duties as a Board Member to the best of his ability, and in accordance with the laws "now in effect and hereafter to be enacted" **See Exhibit A.**

24.   Defendant Dr. Darlene L. Pomponio, pursuant to Mich. Const. art XI § 1 was required to
      sign an Oath of Office swearing to support the Constitution of the United States and the
      Constitution of the State of Michigan, and to faithfully and impartially discharge her duties
      as a Board Member to the best of his ability, and in accordance with the laws "now in effect
      and hereafter to be enacted" **See Exhibit A.**

25.   Defendant Rick Lamos, pursuant to Mich. Const. art XI § 1 was required to sign an Oath
      of Office swearing to support the Constitution of the United States and the Constitution of
      the State of Michigan, and to faithfully and impartially discharge his duties as a Board
      Member to the best of his ability, and in accordance with the laws "now in effect and
      hereafter to be enacted" **See Exhibit A.**

26.   Defendant Jason Craig, pursuant to Mich. Const. art XI § 1 was required to sign an Oath
      of Office swearing to support the Constitution of the United States and the Constitution of
      the State of Michigan, and to faithfully and impartially discharge his duties as a Board
      Member to the best of his ability, and in accordance with the laws "now in effect and
      hereafter to be enacted" **See Exhibit A.**

27.   The Neil J. Freitas pursuant to Mich. Const. art XI § 1 was required to sign an Oath of
      Office swearing to support the Constitution of the United States and the Constitution of the
      State of Michigan, and to faithfully and impartially discharge his duties as a Board Member
      to the best of his ability, and in accordance with the laws "now in effect and hereafter to be
      enacted" **See Exhibit A.**

28.   The Shawn Sage, pursuant to Mich. Const. art XI § 1 was required to sign an Oath of Office
      swearing to support the Constitution of the United States and the Constitution of the State
      of Michigan, and to faithfully and impartially discharge his duties as a Board Member to
      the best of his ability, and in accordance with the laws "now in effect and hereafter to be
      enacted" **See Exhibit A.**

**B.**   **Relevant Policies of the Southgate Community School District Board of Education**

29.   Section 0002, page 1, titled Southgate Community School District Board of Education
      Bylaws and Policies, provides,

      The School District is governed by the Board of Education (the Board). A principal
      function of the Board is to adopt Bylaws and Policies that are reasonable and necessary to
      guide present and future Board and School District decision making and operations. The
      adoption, amendment, or repeal of Bylaws or Policies requires the vote of a majority of the
      Board members elected and serving. Bylaws and Policies supplement the wide body of
      federal and state statutory and regulatory law that applies to public school districts in the
      State of Michigan. Federal and state law supersede these Bylaws and Policies, to the extent
      of any inconsistency. The Board has determined that it is not reasonable or necessary to
      attempt to replicate federal or Michigan statutes or regulations in these Bylaws and
      Policies.

Southgate Policy Manual-U08.06.20-CLEAN (00294773).DOCX (finalsite.net)

30.   In addition, the Board's Policy Manual at Section 2002, page 7 provides,

The core function of the School District is to educate students to prepare them to become productive and responsible citizens and adults. All other policies and considerations are secondary to this objective.

Southgate_Policy Manual-U08.06.20-CLEAN (00294773).DOCX (finalsite.net)

31.   Furthermore, for its, the Policy Manual at Section 2002, page 8, declares,

To the extent permitted by law, the Superintendent and building administrators, in consultation with parents, are responsible for placing and retaining students in schools, grades, and courses consistent with the School District's core function of preparing students to become productive and responsible citizens and adults. Where agreement cannot be reached, following consultation, placement and retention decisions may be made notwithstanding parental objection. The Superintendent will promulgate administrative regulations necessary to implement this policy.

Southgate_Policy Manual-U08.06.20-CLEAN (00294773).DOCX (finalsite.net)

32.   The Board Policy also provides in Section 8006, Page 37, in pertinent part,

The School District will work cooperatively with the Wayne County Health Department to enforce and adhere to the Michigan Public Health Code (Act 368 of 1978 as amended) Michigan Legislature - Act 368 of 1978 with regard to the prevention, control and containment of communicable diseases.

Southgate_Policy Manual-U08.06.20-CLEAN (00294773).DOCX (finalsite.net)

## C.   Southgate Community School District's COVID-19-Based Measures

33.   Southgate Community School District, action adopted by the Board on June 29, 2021, and as stated in the Board Minutes, page 2, Action 1. A. attached hereto as **Exhibit B**, approval of the revision to the Indoor Mask-Wearing Requirement for Southgate Community Schools, states:

Ms. Irvine presented this action item on June 8, the Board of Education approved a policy to retain mask-wearing requirement despite vaccination. Since then, MDHHS has completely eliminated mask-wearing requirements for all. School districts may choose their mask-wearing policies. Most Downriver districts are making masks optional for summer school. To make masks optional for summer school for Southgate Community Schools, the Board will need to revise its prior resolution.

Discussion: masks to be worn by those 11 and under and those 12 and over having the option. Giving parents the option to choose what is best for their family. CDC guidelines about mask wearing and social distancing.

2020/21-198 It was moved by Dr. Pomponio supported by Mr. Sage, the board <u>revised the Southgate Community Schools' mask-wearing policy to allow mask-wearing to be optional in district facilities, effective immediately</u>.

<u>YES: Estheimer, Freitas, Lamos, Pomponio, Sage</u>
NO: Craig, Green

34.   Following this Board adoption to make the mask-wearing optional, Plaintiff's received an e-mail attached hereto as **Exhibit C** from the School stating that masks will be worn while inside the facilities, but that know who or when made this decision as it is not reflected in the Board Agendas or Minutes after June 29, 2021. The e-mail stated the following:

COVID-19 mitigation at AHS
As you all know, the Wayne County Health Department has determined that everyone in a school is required to wear a mask while inside.

- Please have your students prepared to wear a mask while inside our facilities.

35.   The decision to require protective facial covering during pandemic and epidemic events was made said to be made in alignment with Wayne County public health officials Return to School Roadmap, page 9, and attached hereto as **Exhibit D**, which only states that <u>masks are recommended, but not mandated</u>. The Wayne County Health Department Return to School Roadmap states:

"All students <u>must</u> wear a facial covering during school transportation. The CDC and MDHHS <u>recommends</u> that students wear facial covering while in classrooms and in hallways, and common areas in a school building except during meals."

<u>Back to School | COVID-19 Resources (waynecounty.com)</u>

36.   Plaintiffs, Vincent Lewandowski relies on guidance from the Center for Disease Control and Prevention ("CDC"), also pointed out that in contravention to the School Board's mask mandate for students in grade Pre-K through 5, the CDC holds the position that masks mandates for children that young are detrimental and have zero efficacy.

37.   Plaintiffs, Vincent Lewandowski relies on THE REVISED SCHOOL CODE (EXCERPT) Act 451 of 1976, Statement of prohibited practices, 380.1307b (h) and (k), which states:

The state policy under section 1307a shall include a clear statement that all of the following practices are prohibited for school personnel in the public schools of this state under all circumstances, including emergency situations:

(h) Any restraint that negatively impacts breathing.
(k) Any other type of restraint.

Attached hereto as **Exhibit E**.
See also, <u>Michigan Legislature - Section 380.1307b</u>

**D.     The Masking Requirement Causes Immediate and Irreparable Harm to Students, Staff, Community.**

1.      Plaintiff Vincent Lewandowski, also relies on the attached Affidavit, attached hereto as **Exhibit F**, of Stephen E. Petty, an expert environmental toxicologist who is qualified to speak to the health and safety benefits of masks. Mr. Petty is an expert in the field of Industrial Hygiene who has testified as to the futility and danger cause by an individual wearing a mask in order to avoid transmitting or becoming infected with Covid-19, states the following:

> \*\*\*
> \*\*\*
> 1.    I hold relevant industry certifications including board certifications as a C.I.H. (Certified Industrial Hygienist), a C.S.P. (Certified Safety Professional), and as a P.E. (Professional Engineer) in six states (Florida, Kentucky, Ohio, Pennsylvania, Texas and West Virginia). My curriculum is attached hereto as Affidavit **Exhibit i**.
>
> 2.    I have served as an expert tin personal protective equipment and related disciplines in approximately 400 legal cases. I have often been certified as, and provided testimony as, an expert in these areas. My list of representative cases is attached hereto as Affidavit **Exhibit ii.**
>
> 3.    For example, I am currently serving as an expert in the Monsanto Roundup and 3-M PFAS litigation. Recently I testified in four trials for the DuPont C-8 litigation.
>
> 4.    I taught Environmental and Earth Sciences as an adjunct professor at Franklin University.
>
> 5.    I hold nine U.S. patents, most related to heating, ventilation and air conditioning (HVAC) systems.
>
> 6.    I am a current member in good standing of the following relevant associations: American Industrial Hygiene Association (AIHA), American Board of Industrial Hygiene (ABIH), American Conference of Governmental Ind. Hygienists (ACGIH), American Institute of Chemical Engineers (AIChE), American Society of Refrigeration, Air Conditioning and Refrigeration Engineers (ASHRAE); Member ASHRAE 40 Std. and TC 2.3, and Sigma Xi.

7.  I am an expert in the field of Industrial Hygiene, which is the science and art devoted to the anticipation, recognition, μevaluation, and control of those environmental factors or stressors – including viruses – arising in or from the workplace, which may cause sickness, impaired health and well-being, or significant discomfort among workers or among the citizens of the community.

8.  Industrial Hygiene is fundamentally concerned the proper methods of mitigating airborne/dermal hazards and pathogens, as well as with the design and use of engineering controls, administrative controls and personal protective equipment, among other things.

9.  Medical doctors, virologists, immunologists, and many public health professionals are not qualified experts in these areas by virtue of those aforementioned credentials.

10. On May 7, 2021, the Centers for Disease Control (CDC) updated its guidance, providing that the primary mechanism for transmission of Covid-19 is through airborne aerosols, and not, as previously stated, by touching contaminated surfaces or through large respiratory droplets, as also stated during previous periods of the pandemic.

11. Airborne viral aerosols can consist of a single viral particle or multiple viral particles clumped together, and usually smaller than $5\mu$ (microns) in size. By comparison, droplets are $<5\mu$ to $<10\mu$ in size.

12. A square micron is approximately $1/4000^{th}$ the area of the cross-section of a human hair and $1/88^{th}$ the diameter of a human hair. Covid particles are – $1/10$ of a micron or – $1/40,000^{th}$ the area of a cross section of a human hair or – $1/1,000^{th}$ the diameter of a human hair.

13. A recent University of Florida study capturing air samples within an enclosed automobile cabin occupied by a Covid-positive individual showed that the only culturable Covid-19 virus samples obtained were between $0.25\mu$ to $0.5\mu$ in size. Particles smaller than $5\mu$ are considered very small and/or very fine or aerosols.

14. Very small particles do not fall by gravity in the same rate that larger particles do and can stay suspended in still air for a long time, even days to weeks.

15. Because they stay suspended in concentration in indoor air, very small particles can potentially accumulate and become more concentrated over time indoors if the ventilation is poor.

16.     Very small airborne aerosols pose a particularly great risk of exposure and infection because, since they are so small, they easily reach deep into the lung. This explains in part why Covid-19 is so easily spread, and why so little Covid-19 is required for infection.

17.     Exposure to airborne aerosols is a function of two primary parameters: concentration and time. Less is better regarding both parameters.

18.     For many reasons, personal protective equipment (PPE) is the least desirable way to protect people from very small airborne aerosols. Moreover, masks are not PPE since they cannot be sealed and do not meet the provisions of the Occupational Safety and Health Administration (OSHA) Respiratory Protection Standard (RPSJ), namely 29 CFR 1910.134.

19.     Regarding PPE, facial coverings do not effectively protect individuals from exposure to very small airborne aerosols. A device referred to as a respirator is required to provide such protection.

20.      The AIHA, in their September 9, 2020 Guidance Document for COVID-19 (Affidavit **Exhibit iii**) noted that the acceptable relative risk reduction methods must be $\geq$ 90% mask were shown to be only 10% and 5% (See Affidavit **Exhibit iii** – Figure 2) and far below the required 90% level.

21.     Similarly, Shah, et al, 2021 (Affidavit **Exhibit iv**), using ideally sealed masks and particles 1 micron in size, reported efficiencies for the more commonly used cloth masks and surgical masks of 10% and 12% respectively. No mask can be perfectly sealed; thus "real world" effectiveness would be even lower. \

22.     Industrial Hygienists refer to a Hierarchy of Controls" that are typically implemented to minimize exposures, including exposures to very small airborne aerosols like Covid-19.

23.     Regarding practical or "engineering" controls, industrial hygienists focus on practices that dilute, destroy, or contain airborne hazards (or hazards in general).

24.     PPE – especially facial coverings – do not dilute, destroy, or contain airborne hazards. Therefore, facial coverings do not appear anywhere in the Industrial Hygiene *IH) Hierarchy of Controls for very small airborne aerosols like Covid-19. Even respirators (part of the PPE Category and not masks) are in the las priority on the Hierarchy of Controls.

25.     Facial coverings are not comparable to respirators. Leakage occurs around the edges of ordinary facial coverings. Thus, ordinary facial coverings <u>do</u>

<u>not</u> provide a reliable level of protection against inhalation of very small airborne particles and are not considered respiratory protection.

26.    For example, during the seasonal forest fires in the summer of 2020, the CDC issues public guidance warning that facial coverings provide o protection against smoke inhalation. That is because facial coverings do not provide a reliable level of protection against the small particles of ash contained in smoke. Ash particles are substantially larger than Covid-19 aerosolized particles.

27.    I have reviewed the Mayfield City School District (MCSD) "Protective Facial Covering Policy During Pandemic/Endemic Events" as set forth in the Policy Manual of the MCSD Board of Education.

28.    Ordinary facial coverings like the ones required by the MCSD facial covering policy do not meet any of the several key OSHA Respiratory Protection Standards for respirators.

29.    Because of the gaps around the edges of facial coverings required by MCSD's policy, they do not filter out Covid-19 aerosols. The policy stating masks will be worn without gaps defies known science that masks worn today cannot be sealed and always have gaps.

30.    The effectiveness of a cloth facial covering falls to zero when there is a 3% or more open area in the edges around the sides of the facial covering.

31.    Most over-the-counter disposable facial coverings have edge gaps of 10% or more. When adult-sized facial coverings are used by children, edge gaps will usually greatly exceed 10%.

32.    Even short breaks (e.g., to eat) expose individuals to Covid-19 aerosols in indoor spaces.

33.    Ordinary cloth facial coverings like the ones required by the MCSD mask requirement do not provide any filtering benefit relative to particles small than $5\mu$ if not sealed.

34.    Substantial mitigation of Covid-19 particles could be immediately achieved by:

      a.    opening windows and using fans to draw outdoor air into indoor spaces (diluting the concentration of aerosols),

      b.    setting fresh air dampers to maximum opening on HVAC systems,

      c.    overriding HVAC energy controls,

      d.    increasing the number of times indoor air is recycled,

     e.     installing needlepoint ionization technology to HVAC intake fans, and

     f.     installing inexpensive ultraviolet germicide devices into HVAC systems.

35.   All of the above-referenced techniques are more effective and meet standard industrial hygiene hierarchy of controls (practices) for controlling exposures in place for nearly 100 years. The use of cloth facial coverings do not fit within these basic hierarchy of controls since masks are not PPE and cannot be sealed. There are no OSHA standards for facial coverings (masks) as respiratory protection.

36.   Extended use of respiratory PPE is not indicated without medical supervision.

37.   As explained in an article titled "Is a Mask That Covers the Mouth and Nose Free from Undesirable Side Effects in Everyday Use and Free of Potential Hazards?" that was published on April 20, 2021, in the International Journal of Environmental Research and Public Health and that is attached to this Affidavit as **Exhibit iv**, the following negative effects from wearing masks was reported in the literature:

| Increased risk of adverse effects when using masks: | | |
|---|---|---|
| **Internal diseases** | **Psychiatric Illness** | **Neurological Diseases** |
| COPD | Claustrophobia | Migraines and Headache Sufferers |
| Sleep Apnea Syndrome | Panic Disorder | Patients with Intracranial Masses |
| advanced renal Failure | Personality Disorders | Epilepsy |
| Obesity | Dementia | |
| Cardiopulmonary Dysfunction | Schizophrenia | |
| Asthma | helpless Patients | |
| | fixed and sedated Patients | |
| | | |
| **Pediatric Diseases** | **ENT Diseases** | **Occupational Health Restrictions** |
| Asthma | Vocal Cord Disorders | moderate / heavy physical Work |
| Respiratory diseases | Rhinitis and obstructive Diseases | |
| Cardiopulmonary Diseases | | **Gynecological restrictions** |
| Neuromuscular Diseases | **Dermatological Diseases** | Pregnant Women |
| Epilepsy | Acne | |
| | Atopic | |

**Figure 5. Diseases/predispositions with significant risks, according to the literature found, when using masks. Indications for weighing up medical mask exemption certificates.**

    Example statements made in the paper include the following: "The overall possible resulting measurable drop in oxygen saturation (O2) of the blood on the one hand and the increase in carbon dioxide (CO2) on the other contribute to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase, in some cases also to a significant blood pressure increase." **Exhibit iv**, p. 25. In fact, "Neither higher level institutions such as the WHO or the European Centre for Disease Prevention and Control (ECDC) nor national ones, such as the Center for Disease Control and Prevention, GA,

USA (CDC) or the German RKI, substantiate with sound scientific data a positive effect of masks in the public (in terms of a reduced rate of spread of COVID-19 in the population)." **Exhibit iv**, p. 24. For these reasons, students who are required to wear masks pursuant to a mandate suffer immediate and irreparable injury, loss, or damage.

38.    In summary:
a.  PPE is the least desirable way to protect people from very small airborne aerosols.
b.  Facial coverings as required by the MCSD policy are not recognized as PPE since they cannot be sealed and are not covered by the OSHA RPS.
c.  If PPE were to be used for protection, respirators, not facial coverings as required by the MCSD policy are needed to provide any effective protection from very small airborne aerosols.
d.  Very small aerosol particles are more likely to be a greater cause of disease than respiratory droplets because they can evade PPE and reach deep into the lungs, whereas respiratory droplets have to work against gravity in order to travel up a person's nose into the sinus.
e.  Much better alternatives to controlling exposure are available (i.e., engineering controls of dilution – ventilation with increased fresh air and destruction), and should be used to minimize exposures as opposed to masks.
f.  Individuals who are required to wear masks pursuant to a mandate suffer immediate and irreparable injury, loss, and damage due to the overall possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

2.    Plaintiffs, additionally relies on 47 published studies showing that masks don't work and are harmful children that can be located at:

For the Umpteenth Time Masks Don't Work and are Harmful to Children: 47 Studies — Yore Children (**Exhibit J**)

38.  Plaintiffs note that the state of Michigan was given $3,719,833,128 (ARP-ESSER-twothird-onethird-Allocations_Final-1.pdf (ed.gov) **Exhibit G**) pursuant to the American Rescue Plan (ARP") Act of 2021 by agreeing to implement the federal guidelines set forth by the CDC for COVID-19 mitigation efforts. See the attached letter from the U.S. Secretary of Education, attached hereto as **Exhibit H**. See also, Michigan-ARP-ESSER-State-Plan.pdf (ed.gov).

The letter (ARP_Letter_Sec_to_Chiefs_FINAL.pdf (ed.gov) **Exhibit I**) links to the CDC guidelines available at Operational Strategy for K-12 Schools through Phased Prevention | CDC. The guidelines suggest that a school board would forfeit ARP allocations by making

masks optional, and states that have prohibited mask mandates in schools have received letters notifying them that they will not receive ARP funds. Accordingly, it seems Defendants have a financial incentive for implementing the mask mandate, despite that such a requirement serves no scientific purpose and subjects individuals who wear masks to the health risks discussed above.

39.     Plaintiff Vincent Lewandowski, in his own capacity and on behalf of his minor child, K.L., A.L., and M.L, are aggrieved by the immediate and irreparable injury, loss, and damage suffered by K.L., A.L., and M.L because K.L., A.L., and M.L are required to wear a mask pursuant to the School Board's mask mandate, which is not only unsupported by science, but which also results in the possible resulting measurable drop in oxygen saturation of the blood on one hand and the increase in carbon dioxide on the other, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

### COUNT I – 42 U.S.C. §1983 – Violation of Procedural Due Process (5th and 14th Amendments) Against All Defendants)

40.     Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

41.     In order establish a claim under section 1983 of the Civil Rights Act, a plaintiff must prove a Defendant: (a) acted under the color of state law; (b) proximately causing; (c) the Plaintiff to be deprived of a federally protected right. 42 U.S.C. §1983.

42.     In the instant case, Defendants unquestionably acted under the color of state law.

43.     Each Individual Defendant is an elected, voting member of the Southgate Community School District Board of Education with the exception of Defendant Sharon Irvine, who is the Superintendent of the Southgate Community School District.

44.     Under the Fifth Amendment to the Constitution, no person may be deprived of life, liberty, or property without due process of law. U.S. Const. Ann., Amendment V.

45.     The Fourteenth applies the protections of the Fifth Amendment to state actors. U.S. Const. Ann., Amendment XIV.

46.     Plaintiffs have constitutionally protected interests in the benefits that come from the not being subject to the Board's and/or District mask mandate, including the ability to pursue an education without being subjected to health risks that are not offset by any scientifically provable benefits.

47.     Defendants' implementation of the mask policy unlawfully deprives Plaintiffs of these and other constitutionally-protected interests without due process of law. Such deprivation occurred with no notice or meaningful opportunity to be heard as the Superintendent instated the mask mandate prior to offering an opportunity for public discussion. Such deprivation was arbitrary, capricious, based on ignorance without inquiry into facts, and in

violation of the School Board's own policies and other applicable laws. Such deprivation violates the Fifth and Fourteenth Amendments of the United States Constitution.

48. Plaintiffs were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

### COUNT II – 42 U.S.C. §1983 – Violation of Substantive Due process (Fourteenth Amendment) – Against All Defendants

49. Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

50. In order establish a claim under section 1983 of the Civil Rights Act, a plaintiff must prove a Defendant: (a) acted under the color of state law; (b) proximately causing; (c) the Plaintiff to be deprived of a federally protected right. 42 U.S.C. §1983.

51. In the instant case, Defendants unquestionably acted under the color of state law.

52. Each individual Defendant is an elected, voting member of the Southgate Community School District Board of Education with the Exception of Defendant Sharon Irvine, who is the Superintendent of the Southgate Community School District.

53. Under the Fourteenth Amendment to the Constitution, and as established by state law including the state created danger doctrine, Plaintiffs have a fundamental right to a public education and to an education in a safe and healthy environment.

54. Plaintiffs were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

### COUNT III – Violation of Procedural Due Process (Michigan Constitution Art. I, §17) Against All Defendants

55. Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

56. Article I, §17 of the Michigan Constitution provides, "No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed.

57.   Article I, §17 of the Michigan Constitution affords the people of Michigan with the right to be free from violations of the procedural due process rights, and no person may be deprived of life, liberty, or property without due process of law.

58.   Plaintiffs have constitutionally protected interests in the benefits that come from not being subject to the Board's mask mandate, including the ability to pursue an education without being subjected to health risks that are not offset by any scientifically provable benefits.

59.   Defendants' implementation of the mask policy unlawfully deprives Plaintiffs of these and other constitutionally-protected interests without due process of law. Such deprivation occurred with no notice or meaningful opportunity to be heard as the Superintendent instated the mask mandate prior to offering an opportunity for public discussion. Such deprivation was arbitrary, capricious, based on ignorance without injury into facts, and in violation of the School Board's own policies and other applicable laws. Such deprivation violates Article I, §17 of the Michigan Constitution.

60.   Plaintiffs were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

## COUNT IV – Violation of Substantive Due Process
## (Michigan Const. Art. I, §17) Against All Defendants

61.   Plaintiffs incorporate the foregoing paragraphs as if set forth in full herein.

62.   Article I, §17 of the Michigan Constitution provides, "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law."

63.    Article I, §17 of the Michigan Constitution affords the people of Michigan with the right to be free from violations of the procedural due process rights, and no person may be deprived of life, liberty, or property without due process of law.

64.   Under Article VIII, §2 of the Michigan Constitution, and as established by state law including the state created danger doctrine, Plaintiffs have a fundamental right to a public education without any form of medical discrimination or segregation.

65.   Plaintiffs were harmed and continue to be irreparably harmed by these unlawful acts, including by suffering an overall possible simultaneous drop in oxygen saturation of the blood and increase in carbon dioxide, which contributes to an increased noradrenergic stress response, with heart rate increase and respiratory rate increase and, in some cases, a significant blood pressure increase.

## RESERVATION OF RIGHTS

Plaintiffs herein expressly reserve their rights in regard to any additional claims to which they may be entitled under federal law as well as under the laws of the State of Michigan or other violations or actions of misconduct that may have been committed by Defendants. Plaintiffs expressly place Defendants on notice of Plaintiffs' intention to initiate removal proceedings at the state court level against Defendants as a result of the infractions Defendants have committed, as described herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request that the Court grant the following relief:

a.    Assume jurisdiction of this action:

b.    Vacate and set aside the Defendants' mask mandate as well as any other action taken by Defendants to institute the mask mandate and implement the provisions of the mask policy;

c.    Declare that the institution of the mask policy and actions taken by Defendants to implement the mask policy are arbitrary, capricious, based on ignorance due to failure to inquire into facts, otherwise not in accordance with law, and without observance of required procedures;

d.    Declare that the mask policy and the actions taken by Defendants to implement the mask policy are in violation of the Constitution and contrary to the laws of the United States and the State of Michigan.

e.    Temporarily retrain, as well as preliminarily and permanently enjoin Defendants, their agents, servants, employees, attorneys, and all persons in active concert or participation with any of them, from implementing or enforcing the mask policy and from taking any other action to implement the masking policy that is not in compliance with applicable law; and

f.    Grant such other and further relief as may be just, equitable, and proper including without limitation, an award of attorneys' fees and costs to Plaintiffs.

Respectfully submitted,

BY: /s/ Vincent Lewandowski
Vincent Lewandowski,
1118 Wheelock.
Detroit, MI 48208
(313)743-1315

Dated: September 27, 2021

JS 44 (Rev. 10/20) **CIVIL COVER SHEET** County in which action arose: *Wayne*

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
KL, AL, MI

**DEFENDANTS**
Southgate Board of Ed

(b) County of Residence of First Listed Plaintiff **Wayne**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant **Wayne**
*(IN U.S. PLAINTIFF CASES ONLY)*

(c) Attorneys *(Firm Name, Address, and Telephone Number)*

Case: 2:21-cv-12316
Judge: Lawson, David M.
MJ: Stafford, Elizabeth A.
Filed: 09-30-2021 At 04:36 PM
CMP KL,minor, et al v. Southgate Community Schools Board of Education, e

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1 U.S. Government Plaintiff
- [x] 3 Federal Question *(U.S. Government Not a Party)*
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(For Diversity Cases Only)* and One Box for Defendant

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*
Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane / [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability / Product Liability |  |  | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel & / [ ] 367 Health Care/ |  | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | Slander / Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' / Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) | Liability / [ ] 368 Asbestos Personal Injury Product Liability | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation |
| | [ ] 340 Marine | | [ ] 840 Trademark | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product Liability / **PERSONAL PROPERTY** | | [ ] 880 Defend Trade Secrets Act of 2016 | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle / [ ] 370 Other Fraud | **LABOR** | | [ ] 485 Telephone Consumer Protection Act |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability / [ ] 371 Truth in Lending | [ ] 710 Fair Labor Standards Act | | |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal / [ ] 380 Other Personal Property Damage | [ ] 720 Labor/Management Relations | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | Injury / [ ] 385 Property Damage Product Liability | [ ] 740 Railway Labor Act | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ Exchange |
| | [ ] 362 Personal Injury - Medical Malpractice | [ ] 751 Family and Medical Leave Act | [ ] 862 Black Lung (923) | [ ] 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | [ ] 790 Other Labor Litigation | [ ] 863 DIWC/DIWW (405(g)) | [ ] 891 Agricultural Acts |
| [ ] 210 Land Condemnation | [x] 440 Other Civil Rights / **Habeas Corpus:** | [ ] 791 Employee Retirement Income Security Act | [ ] 864 SSID Title XVI | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 441 Voting / [ ] 463 Alien Detainee | | [ ] 865 RSI (405(g)) | [ ] 895 Freedom of Information Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment / [ ] 510 Motions to Vacate Sentence | | **FEDERAL TAX SUITS** | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/ Accommodations / [ ] 530 General | | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| [ ] 245 Tort Product Liability | [ ] 445 Amer. w/Disabilities- Employment / [ ] 535 Death Penalty | | [ ] 871 IRS—Third Party 26 USC 7609 | |
| [ ] 290 All Other Real Property | [ ] 446 Amer. w/Disabilities- Other / **Other:** | **IMMIGRATION** | | [ ] 950 Constitutionality of State Statutes |
| | [ ] 448 Education / [ ] 540 Mandamus & Other | [ ] 462 Naturalization Application | | |
| | [ ] 550 Civil Rights | [ ] 465 Other Immigration Actions | | |
| | [ ] 555 Prison Condition | | | |
| | [ ] 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1 Original Proceeding
- [ ] 2 Removed from State Court
- [ ] 3 Remanded from Appellate Court
- [ ] 4 Reinstated or Reopened
- [ ] 5 Transferred from Another District *(specify)*
- [ ] 6 Multidistrict Litigation - Transfer
- [ ] 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 USC 1343 (a)(3) and (4) 42 USC 1983
Brief description of cause:
Civil Rights/Civil Rights Deprivation

## VII. REQUESTED IN COMPLAINT:
- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [ ] No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____  DOCKET NUMBER _____

DATE _____  SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?          ☐ Yes
                                                                        ☒ No

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other          ☐ Yes
            court, including state court? (Companion cases are matters in which      ☒ No
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____

Notes :